IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | SEALED |
| | § | |
| V. | § | Case No. 4:22-CR- 280 |
| | § | Judge Jordan |
| TROY MAC HOHENBERGER | § | |

## INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

### General Allegations

At all times material to the facts set forth in this Indictment:

1. The Argyle Fire District, Inc. ("AFD") was an organization and legal entity that provided fire protection and emergency medical services to areas within Denton County, Texas, within the Eastern District of Texas. The AFD received funding from the Denton County Emergency Services District #1 ("DCESD1") and other sources, including Medicare federal benefits.

2. **Troy Mac Hohenberger** was an individual who was the Chief Firefighter for the AFD and was an agent of the AFD.

3. The Argyle Fire District 401(k) Plan was a retirement fund plan that qualified as an Employee Retirement Income Security Act of 1974 ("ERISA") plan. **Hohenberger** served as the Plan Administrator of the Argyle Fire District 401(k) Plan.

4. FMR LLC, also known as Fidelity ("Fidelity"), was an entity that managed various retirement funds, including the Argyle Fire District 401(k) Plan.

1

5. Northstar Bank of Texas was a financial institution, and the AFD maintained an operating account at this bank, with account number XXX7210 (the "AFD Operating Account").  **Hohenberger** was the signatory on the AFD Operating Account.

6. Independent Bank was a financial institution.  In or around 2017, Independent Bank acquired Northstar Bank of Texas, and in 2019 the AFD Operating Account was re-numbered XXXXXX1632.  **Hohenberger** was the signatory on the newly numbered AFD Operating Account.

7. Medicare was a federal health care insurance program that paid certain medical expenses incurred by individuals who had Medicare insurance.  Medicare contracted with companies to administer claims and to process Medicare payment of benefits to health care providers.

8. Novitas Solutions, Inc., was an entity that provided claims administration services for the federal Medicare insurance program and processed Medicare payments to the AFD.

Argyle Fire District 401(k) Plan

9. In his role as chief of the AFD **Hohenberger** was responsible for overall management of the AFD, including firefighting operations, department finances, pay, deductions, and retirement plan contributions.  Approximately more than 30 firefighters worked for the AFD during the years 2017-2022.

10. In his role as Plan Administrator of the Argyle Fire District 401(k) Plan ("AFD 401(k)"), **Hohenberger** managed and oversaw the deductions from firefighter pay that were to be contributed to the various firefighter's retirement accounts.  The

retirement accounts were maintained at Fidelity. In general, under the terms of the AFD 401(k) plan, firefighters who worked for the AFD would contribute seven percent of their pay and the AFD would "match" that amount by contributing an amount equal to 14 percent of the firefighters' pay into the respective retirement accounts. **Hohenberger** was responsible as the plan administrator to transfer both the firefighter retirement contributions as well as the AFD employer matching contributions to Fidelity so that they could be deposited into the various firefighters' retirement accounts.

11. **Hohenberger** represented to firefighters who joined the AFD that they were not eligible to participate in the AFD 401(k) plan during the first year of employment. But **Hohenberger** also told these firefighters that—if they agreed—the AFD would withhold from their pay an amount equal to a retirement plan contribution and then deposit it with Fidelity when a retirement account was opened for the firefighter at the beginning of their second year of employment. New firefighters who agreed to this process received paycheck stubs showing that their pay was being reduced for the contributions to the AFD 401(k) and that the AFD was contributing the matching 14 percent to their retirement funds. But **Hohenberger** did not open Fidelity retirement accounts for several new firefighters and he did not move the firefighter's contributions to those accounts, but instead left the money in the comingled AFD Operating Account. Additionally, **Hohenberger** did not deposit the AFD matching funds for these new firefighters into any Fidelity retirement account.

The AFD Received Federal Benefits in the form of Medicare Reimbursements

12. The AFD provided emergency ambulatory services for residents of the DCESD1 service area. On occasion the AFD firefighters would provide emergency medical service and transportation to a hospital for an individual who was a Medicare beneficiary. When that occurred the AFD would submit a bill to Medicare for the medical services rendered. Novitas Solutions, Inc. ("Novitas"), an entity that provided claims administration services for the Medicare program, would receive the claims and determine if benefits were payable under the program. If so, Novitas would transmit Medicare federal benefit funds via automated clearinghouse ("ACH") payment into the AFD Operating Account. Starting in or around 2021, Novitas transferred these Medicare federal benefit funds via ACH to a DCESD1 bank account; after the funds were credited to the account in this manner, the Medicare benefit funds would then be transferred to the AFD Operating Account.

13. During each of the calendar years 2018 – 2021 the AFD received more than $10,000 in federal Medicare insurance benefits that were deposited or transferred into the AFD Operating Account.

Hohenberger Stole, Embezzled, Misapplied, and willfully Abstracted and Converted Money in the AFD Operating Account

14. From in or around 2018 through 2021, **Hohenberger** accessed, stole, used, embezzled, and willfully abstracted and converted funds from the AFD Operating Account for his own needs and purposes. During these years **Hohenberger** would frequently take and use funds from the AFD Operating Account to pay the balances owed

on his personal credit cards. These credit card charges included, for example, over approximately $350,000 in cash advances at multiple casinos along with related fees. Additionally, **Hohenberger** used over approximately more than $50,000 in the AFD Operating Account to pay for business expenses of a business located in Hawaii that was run by one of his relatives. **Hohenberger** also used the AFD Operating Account to pay charges he had made to personal credit cards for expenses such as taxes on his real estate properties, meals at restaurants, travel expenses, retail purchases, medical and dental expenses, auto expenses, and other personal expenses.

15. From February 2018 through May 2021, **Hohenberger** utilized the AFD Operating Account to make approximately eighty payments to his personal credit cards accounts totaling more than approximately $490,000.

Hohenberger Falsified Statements on Submissions of Form 5500 to the Department of Labor

16. One of **Hohenberger's** responsibilities as the Plan Administrator of the AFD 401(k) was to submit a Form 5500, "Annual Return / Report of Employee Benefit Plan" to the United States Department of Labor. This form was required to be published and submitted to the Department of Labor by the Employee Retirement Income Security Act of 1974.

17. Within the Forms 5500, **Hohenberger** provided information about the AFD 401(k) plan, firefighter participants in the plan, funds belonging to the plan, and plan assets and liabilities. **Hohenberger** also was required to state, related to the relevant plan year, whether there was a failure to transmit to the plan any participant contributions

within the time period described in a federal regulation, 29 C.F.R. § 2510.3-102. Under that regulation, participant contributions are required to be deposited with the custodian of the retirement account (here, Fidelity) no later than the earliest date on which such contributions can reasonably be segregated from the employer's general assets, but in no event later than the 15th day of the month following the month in which the funds were withheld from the employees' salaries. In this case Hohenberger could reasonably have deposited the participant contributions with Fidelity five business from the date they were withheld.

18. Instead of disclosing that he had not transferred the firefighter retirement contributions that were being withheld from their pay, **Hohenberger** would falsely report in answer to the above question on the Form 5500 that he had not failed to transmit those funds to the AFD 401(k) plan. From January 1, 2018 through December 31, 2021, **Hohenberger** failed to deposit approximately more than $690,000 in the time period required by the federal regulation above. **Hohenberger** later made numerous deposits of funds into Fidelity retirement accounts after being confronted by firefighters whose accounts were short, but never fully deposited the retirement funds withheld from firefighter pay.

## COUNTS 1 - 4

Violation: 18 U.S.C. § 666 (Theft or bribery concerning programs receiving Federal funds)

19.   The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

20.   On or about the dates set forth below, in the Eastern District of Texas, the defendant, **Troy Mac Hohenberger**, being an agent of an organization (the Argyle Fire District, Inc.), said organization receiving in each one year period of calendar years 2018, 2019, 2020 and 2021, benefits in excess of $10,000 under a Federal program, specifically the Medicare program for the payment of medical expenses, embezzled, stole, obtained by fraud, and without authority knowingly converted to the use of a person not the rightful owner, and intentionally misapplied property worth at least $5,000 and owned by, under the care of, and under the control of such organization, that is, funds contained in the operating account of the Argyle Fire District, Inc.:

| COUNT | DATE (ON OR ABOUT) | DESCRIPTION OF THE FUNDS EMBEZZLED, STOLEN, OBTAINED BY FRAUD, WITHOUT AUTHORITY KNOWINGLY CONVERTED, AND INTENTIONALLY MISAPPLIED (APPROXIMATE AMOUNTS) |
|---|---|---|
| 1 | October 3, 2018 | $16,016.90 ACH payment from AFD Operating account XXXXXX7210 to Barclays credit card account ending in 5132, held in the name of Troy M. Hohenberger |
| 2 | July 1, 2019 | $10,325.16 ACH payment from AFD Operating account XXXXXX1632 to Bank of America credit card account ending in 3314, held in the name of Troy Hohenberger |
| 3 | March 2, 2020 | $22,716.13 ACH payment from the AFD Operating account XXXXXX1632 to Bank of America credit card account ending in 3314, held in the name of Troy Hohenberger |

| COUNT | DATE (ON OR ABOUT) | DESCRIPTION OF THE FUNDS EMBEZZLED, STOLEN, OBTAINED BY FRAUD, WITHOUT AUTHORITY KNOWINGLY CONVERTED, AND INTENTIONALLY MISAPPLIED (APPROXIMATE AMOUNTS) |
|---|---|---|
| 4 | May 3, 2021 | $24,179.17 ACH payment from the AFD Operating account XXXXXX1632 to Barclays credit card account ending in 5132, held in the name of Troy M. Hohenberger |

All in violation of 18 U.S.C. § 666.

## COUNTS 5 - 9

<u>Violation</u>: 18 U.S.C. § 664 (Theft or embezzlement from employee benefit plan)

21. The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

22. On or about the dates set forth below, in the Eastern District of Texas, the defendant, **Troy Mac Hohenberger**, did embezzle, steal and unlawfully and willfully abstract and convert to his own use and the use of another, in the approximate amounts set forth below, the moneys, funds, securities, premiums, credits, property and other assets of the Argyle Fire District 401(k) Plan, an employee pension benefit plan, subject to Title I of the Employee Retirement Income Security Act of 1974, and of a fund connected with such plan:

| COUNT | DATE (ON OR ABOUT) | DESCRIPTION OF THE FUNDS EMBEZZLED, STOLEN, AND UNLAWFULLY AND WILLFULLY ABSTRACTED AND CONVERTED (APPROXIMATE AMOUNT) |
|---|---|---|
| 5 | April 15, 2020 | $3,097.47 withheld from employees pay for the exclusive purpose of being transmitted to their retirement accounts with FMR LLC remained comingled with the general assets of the employer. |
| 6 | January 15, 2021 | $3,551.83 withheld from employees pay for the exclusive purpose of being transmitted to their retirement accounts with FMR LLC remained comingled with the general assets of the employer. |
| 7 | February 15, 2021 | $1,281.64 withheld from employees pay for the exclusive purpose of being transmitted to their retirement accounts with FMR LLC remained comingled with the general assets of the employer. |
| 8 | February 15, 2021 | $1,291.30 withheld from employees pay for the exclusive purpose of being transmitted to their retirement accounts with FMR LLC remained comingled with the general assets of the employer. |
| 9 | May 15, 2021 | $3,869.27 withheld from employees pay for the exclusive purpose of being transmitted to their retirement accounts with FMR LLC remained comingled with the general assets of the employer. |

In violation of 18 U.S.C. § 664.

## COUNTS 10 - 13

Violation: 18 U.S.C. § 1027
(False statements and
concealment of facts in relation to
documents required by the
Employee Retirement Income
Security Act of 1974)

23. The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

24. On or about each of the dates set forth below, in the Eastern District of Texas, in a document required by title I of the Employee Retirement Income Security Act of 1974 ("ERISA") to be published and kept as part of the records of the Argyle Fire District 401(k) Plan, an employee pension benefit plan, the defendant **Troy Mac Hohenberger** did make false statements and representations of fact, knowing the same to be false, and did knowingly conceal, cover up and fail to disclose facts, the disclosure of which was required by ERISA to be published and which were necessary to verify, explain, clarify and check for accuracy and completeness of the Annual Report, "Form 5500," "Annual Return/Report of Employee Benefit Plan," a report required by ERISA to be published and information required by ERISA to be certified, that is, that there was not a failure to timely transmit to the plan any participant contributions as described below:

| COUNT | DATE (ON OR ABOUT) | DESCRIPTION OF FALSE STATEMENT AND CONCEALMENT |
|---|---|---|
| 10 | October 18, 2018 | On Schedule I to a 2017 Form 5500, "Annual Return / Report of Employee Benefit Plan," answering "no" to the question of whether there was a failure to transmit to the plan any participant contributions within the time period described in 29 CFR 2510.3-102. |
| 11 | April 29, 2020 | On Schedule I to a 2018 Form 5500, "Annual Return / Report of Employee Benefit Plan," answering "no" to the question of whether there was a failure to transmit to the plan any participant contributions within the time period described in 29 CFR 2510.3-102. |
| 12 | September 22, 2020 | On Schedule I to a 2019 Form 5500, "Annual Return / Report of Employee Benefit Plan," answering "no" to the question of whether there was a failure to transmit to the plan any participant contributions within the time period described in 29 CFR 2510.3-102. |
| 13 | October 18, 2021 | On Schedule I to a 2020 Form 5500, "Annual Return / Report of Employee Benefit Plan," answering "no" to the question of whether there was a failure to transmit to the plan any participant contributions within the time period described in 29 CFR 2510.3-102. |

In violation of 18 U.S.C. § 1027.

## **NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE**

The allegations contained in the general allegations section and Counts 1–13 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 18, United States Code, Section 982(a)(7), and Title 28, United States Code, Section 2461(c).

Upon conviction of the offenses in violation of Title 18, United States Code, Section 666 set forth in Counts 1-4 of this Indictment, and upon conviction of the offenses in violation of Title 18, United States Code, Section 664 set forth in Counts 5-9 of this Indictment, the defendant, **Troy Mac Hohenberger**, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses, including, but not limited to a money judgment.

Upon conviction of the offenses in violation of Title 18, United States Code, Section 1027 set forth in Counts 10-13 of this Indictment, the defendant, **Troy Mac Hohenberger**, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, including, but not limited to a money judgment.

If any of the property described above, as a result of any act or omission

of the defendant:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third party;

      c.    has been placed beyond the jurisdiction of the court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(7), and 28 U.S.C. § 2461(c).

A TRUE BILL

_____      11-16-2022
GRAND JURY FOREPERSON      Date

BRIT FEATHERSTON
UNITED STATES ATTORNEY

_____      November 16, 2022
BY: THOMAS E. GIBSON      Date
Assistant United States Attorney
BRENT ANDRUS
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | SEALED |
| | § | |
| V. | § | Case No. 4:22-CR-_____ |
| | § | Judge _____ |
| TROY MAC HOHENBERGER | § | |

## NOTICE OF PENALTIES

### COUNTS 1 - 4

Violation: 18 U.S.C. § 666 (Theft or bribery concerning programs receiving Federal funds)

Penalty: Imprisonment for a term of not more than ten years, a fine of not more than $250,000 or not more than the greater of twice the gross pecuniary gain or twice the gross loss from the offense, or both. A term of supervised release of not more than three years in addition to such term of imprisonment.

Restitution: Mandatory restitution to the victims of the offense.

Special Assessment: $100.00

### COUNTS 5 - 9

Violation: 18 U.S.C. § 664 (Theft or embezzlement from employee benefit plan)

Penalty: Imprisonment for a term of not more than five years, a fine of not more than $250,000 or not more than the greater of twice the gross pecuniary gain or twice the gross loss from the offense, or both. A term of supervised release of not more than three years in addition to such term of imprisonment.

Restitution: Mandatory restitution to the victims of the offense.

Special Assessment: $100.00

## COUNTS 10 - 13

| | |
|---|---|
| Violation: | 18 U.S.C. § 1027 (False statements and concealment of facts in relation to documents required by the Employee Retirement Income Security Act of 1974) |
| Penalty: | Imprisonment for a term of not more than five years, a fine of not more than $250,000 or not more than the greater of twice the gross pecuniary gain or twice the gross loss from the offense, or both. A term of supervised release of not more than three years in addition to such term of imprisonment. |
| Restitution: | Mandatory restitution to the victims of the offense. |
| Special Assessment: | $100.00 |